IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **LAURA MOORE,**<br><br>      Plaintiff,<br>vs.<br><br>**SALT LAKE CITY CORPORATION; SALT LAKE CITY DEPARTMENT OF AIRPORTS; SALT LAKE CITY AIRPORT POLICE; and JOHN DOES 1-5,**<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:16-CV-256-DAK<br><br>Judge Dale A. Kimball |

      This matter is before the court on Defendants Salt Lake City Corporation, Salt Lake City Department of Airports, and Salt Lake City Airport Police's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. A hearing on the matter was held on February 8, 2017. At the hearing, Plaintiff was represented by Kent Morgan. Defendants were represented by S. Spencer Brown. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

      Plaintiff Laura Moore alleges that Salt Lake City Airport Police officers, who are employees of Defendants Salt Lake City Corporation, Salt Lake City Department of Airports, and Salt Lake City Airport Police (collectively "SLCC"), violated her civil rights by refusing to let her travel with her two children.

1

Ms. Moore divorced Tyler Moore on November 4, 2009. On December 2, 2010, the court in the divorce proceeding, upon a motion from Mr. Moore, entered an Order for Enforcement of Divorce Decree and Amended Divorce Decree, which allowed for peace officer enforcement of the decrees. On May 31, 2013, the court in the divorce proceeding granted another petition to modify the divorce decree. The May 31, 2013, modification granted sole physical and legal custody of Tyler Moore and Ms. Moore's two minor children to Tyler Moore. The order allowed for parent time for Ms. Moore as set forth in Utah Code Ann. § 30-3-35 and provided for peace officer enforcement of the decree. The order also required Ms. Moore to complete parenting classes or programs and allowed Tyler and Ms. Moore to agree to parent-time arrangements after Ms. Moore completed the training, which they did through a Stipulation on November 10, 2014.

On December 29, 2014, Ms. Moore attempted to travel with her minor children from the Salt Lake City International Airport to Hawaii. On that day, Tyler Moore appeared at the airport with the most recent divorce decree and the stipulated agreement and stated that Ms. Moore was attempting to travel out of state with his minor children in violation of the court's order. Tyler Moore asked a Salt Lake City Airport Police officer to enforce the court's order. The officer reviewed the order and the applicable statutes alone and reviewed them again with his sergeant, who arrived shortly thereafter. Tyler Moore and the officers apparently interpreted the order and applicable statutes as requiring Ms. Moore to receive permission from Tyler Moore before taking the children on extended vacations. The two officers contacted Ms. Moore at a departure gate and informed her that she would not be allowed to fly with her children. She was compliant and left the secure area of the airport. Ms. Moore was not arrested during this incident.

After the incident, David Maddox, Ms. Moore's attorney in her divorce case, contacted the Salt Lake City Airport Police to explain to them that Ms. Moore's ex-husband was notified

well in advance of Ms. Moore's visitation dates and of her plans to take the children to Hawaii. The officer who took the call explained to Mr. Maddox that he would not discuss the case over the phone and that Mr. Maddox could obtain a copy of the report through the proper channels.

On March 31, 2016, Ms. Moore filed a Complaint in this court against SLCC alleging a violation of her constitutional right to interstate travel; a failure to supervise or train the Salt Lake City Airport Police officers; and a violation of the due process clause of the Utah Constitution. On August 20, 2016, SLCC filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment asking the court to dismiss all of Ms. Moore's claims for failure to state a claim upon which relief can be granted.

## DISCUSSION

In its Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, SLCC argues that Ms. Moore fails to allege facts to establish any violation of her civil rights or to provide plausible grounds for government entity liability against SLCC. Ms. Moore argues that the Salt Lake City Airport Police officers prevented Ms. Moore from boarding an airplane in violation of her constitutional right to interstate travel without any justification and that they made many unreasonable and unjustified errors, which manifests a fundamental lack of training of the officers by SLCC. The court will address each of these arguments.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain enough factual allegations 'to state a claim to relief that is plausible on its face.'" *Smith v. Millett*, No. 2:07-CV-723-TS, 2009 WL 3181996, at *6 (D. Utah Sept. 28, 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). The Tenth Circuit has interpreted *Twombly* to mean that "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556). Moreover, "[f]actual allegations in a complaint must be enough to raise a right to relief above the speculative level," and "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for his claim." *Smith*, 2009 WL 3181996, at *6 (internal quotations and citations omitted). "The requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* (internal quotations and citations omitted). "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Generally, a dismissal under Rule 12(b)(6) for failure to state a claim is generally with prejudice. *Smith*, 2009 WL 3181996, at *6 (citing *Sheldon v. Vermonty*, 269 F.3d 1202, 1207 (10th Cir. 2001)).

   Rule 12 also requires the court to treat a motion to dismiss under Rule 12(b)(6) as a motion for summary judgment "[i]f . . . matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). To the extent the court construes the motion as a motion for summary judgment, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issues as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). When the non-moving party bears the burden of proof, summary judgment is warranted by demonstration of an absence of facts to support the non-moving party's case.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When qualified immunity is involved, "a defendant asserts a qualified immunity defense" then "the burden shifts to the plaintiff, who must meet a 'heavy two-part burden.'" *Chavez v. Poleate*, No. 2:04-CV-1104-TC, 2007 WL 1795763, at *3 (D. Utah June 20, 2007) (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). The plaintiff first must establish that "the officer's conduct violated a constitutional right," and then the plaintiff must show that "the right was clearly established." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

## CONSTITUTIONAL RIGHT TO INTERSTATE TRAVEL

"The constitutional right to travel from one State to another . . . occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." *United States v. Guest*, 383 U.S. 745, 757 (1966); *see also Saenz v. Roe*, 489, 498 (1999) ("The 'constitutional right to travel from one State to another' is firmly embedded in [U.S. Supreme Court] jurisprudence.") (citations omitted). Despite its fundamental position, the right to interstate travel does not guarantee a right to the most convenient form of travel and does not preclude minor restrictions on travel. *See, e.g.*, *Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991) ("[T]ravelers do not have a constitutional right to the most convenient form of travel. Minor restrictions on travel simply do not amount to the denial of a fundamental right that can be upheld only if the Government has a compelling justification." (citation omitted)). "Despite the fundamental nature of [the right to travel], there nonetheless are situations in which a State may prevent a citizen from leaving." *Jones v. Helms*, 452 U.S. 412, 419 (1981).

To determine whether Ms. Moore was denied her constitutional right to interstate travel, the court will first consider whether a state family law restriction on a noncustodial parent

traveling interstate with his or her children amounts to a denial of the fundamental right to interstate travel. Although the exact nature of the restriction placed on Ms. Moore in this case is disputed, the most burdensome interpretation of the restriction placed on Ms. Moore by the court order and the corresponding statute is that Ms. Moore is required to inform the custodial parent in writing of the timing and location of any extended vacations that she is planning to take with her children. Other courts have considered more burdensome restrictions and concluded that they do not amount to a denial of the fundamental right to interstate travel. *See, e.g.*, *Niles v. Univ. Interscholastic League*, 715 F.2d 1027, 1030-31 (5th Cir. 1983) (concluding that the restriction preventing plaintiff from "travel[ing] back and forth between California and Texas *and* continu[ing] to take part in varsity interscholastic sports" was "both limited in scope and insignificant in magnitude" (citation omitted)); *D.S. v. A.F.*, No. E038894, 2006 WL 3813601, at *8 (Cal. Ct. App. Dec. 28, 2006) (concluding that a "no travel by air" restriction did not constitute a constitutional violation of a father's right to travel because it was "limited to [the child] traveling by air with father" and did "not prohibit father from traveling or even prevent him from traveling by air"); *In re Marriage of McGinnis*, 7 Cal. App. 4th 473, 480 (1992) (noting that "[a] trial court's order denying [a mother's] request to remove the children may 'chill' her constitutional right to travel, but only indirectly").

      The court concludes that the restriction on Ms. Moore's ability to travel interstate in this case is the type of minor restriction that is both limited in scope and insignificant in magnitude such that it does not amount to a denial of Ms. Moore's constitutional right. As part of a divorce decree, a state court can require one parent to inform the other parent in writing of the timing and location of any extended vacation with the children of both parents without denying the parent

6

his or her constitutional right to travel. The state court can also allow for peace officer enforcement of the order without denying the parent his or her constitutional right to travel.

However, Ms. Moore does not appear to be arguing that the state lacked the power to restrict her right to interstate travel in a divorce decree. Instead, Ms. Moore appears to be arguing that she complied with the divorce decree, that the divorce decree did not restrict her right to travel in this case, or that the divorce decree was superseded by a stipulation signed by the parties. Ms. Moore then argues that, because she was in compliance with the divorce decree, she was improperly denied her right to interstate travel when she was informed by the two Salt Lake City Airport Police officers that she would not be allowed to fly to Hawaii with her children.

Given the fact that all of Ms. Moore's arguments depend on the proper interpretation and application of the divorce decree and the parent-time statute, this case can be more accurately thought of as a dispute over visitation rights than as an alleged violation of the right to interstate travel. And the Tenth Circuit has clarified that a United States District Court can properly dismiss claims like the ones asserted by Ms. Moore because "§ 1983 should not be viewed as a vehicle to resolve a dispute involving visitation rights-privileges. That is a subject uniquely reserved to the state court system." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981); *see also Brown v. Ives*, 129 F.3d 209, 213 (1st Cir. 1997) ("[E]specially in the family-law realm, federal damage actions under section 1983 have usually proved to be an ineffective means of adjusting disputes with the authorities."). In other words, even if Ms. Moore has valid arguments regarding the proper interpretation and application of the divorce decree, those arguments should be brought directly to the state courts and not indirectly through a § 1983 action in federal court.

**QUALIFIED IMMUNITY**

SLCC argues that, even if the court determines that the two Salt Lake City Airport Police officers misinterpreted the divorce decree or the parent-time statute, the officers should still be entitled to qualified immunity. Qualified immunity applies to "government officials performing discretionary functions" and generally shields those officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[Q]ualified immunity is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery, as inquiries of this kind can be peculiarly disruptive of effective government." *Garrett v. Stratman*, 254 F.3d 946, 951 (10th Cir. 2001) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)) (internal quotation marks omitted). Therefore, the United States Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

After a defendant raises a qualified immunity defense, "the burden shifts to the plaintiff" to meet a "two-pronged test." *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003). "The plaintiff must show that (1) the official violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established when the alleged violation occurred." *Id.* "The law is clearly established when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as plaintiff maintains." *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1248 (10th Cir. 2003). "[T]he contours of the right must be sufficiently clear such that an objectively reasonable officer would understand that what she is doing violates that right." *Id.* "If the plaintiff does not satisfy

either portion of the two-pronged test, the Court must grant the defendant qualified immunity." *Verdecia*, 327 F.3d at 1174.

In this case, a Salt Lake City Airport Police officer was presented with a court order from a custodial parent, Tyler Moore, which provided for visitation as outlined in the parent-time statute and for peace officer enforcement of the order. One portion of the Utah parent-time statute requires both parents to "provide notification of extended parent-time or vacation weeks with the child at least 30 days prior to the end of the child's school year to the other parent." Utah Code Ann. § 30-3-35(2)(m). Tyler Moore claimed that he had not been given the required notification from Ms. Moore. The officer consulted with his sergeant about the situation, and the officers concluded that Ms. Moore was not in compliance with the order and that, therefore, she should not be able to travel with her children. The officers approached Ms. Moore and requested that she not board the plane. After a brief conversation, Ms. Moore agreed not to fly with her children and was escorted out of the airport.

Ms. Moore argues that the officers violated her constitutional right to travel, that they misinterpreted the parent-time statute, and that she provided the required notification to her ex-husband. As discussed above, the court has already concluded that Ms. Moore's constitutional right to interstate travel was not denied in this situation. In terms of whether the officers misinterpreted the parent-time statute, the court concludes that any right claimed by Ms. Moore under the statue was not clearly established when the alleged violation occurred. The court is not aware of, and Ms. Moore has not identified, any case that interprets Utah Code Ann. § 30-3-35(2)(m) or that establishes a right under that provision. Therefore, the court concludes that whatever right may exist under that statute is not sufficiently clear for the two officers in this case to understand that their conduct may have violated a statutory right.

9

Finally, Ms. Moore argues that she provided the required notification to her husband and that both she and her attorney informed the officers of that fact. However, in order to meet her burden to overcome the qualified immunity defense, Ms. Moore must do more than show that she provided a different story to the officers than her ex-husband did. "In a § 1983 action, the burden is on the plaintiff to show that the witness's statement did not constitute reasonably trustworthy information sufficient to lead a prudent police officer to conclude that Plaintiff [committed an offense]." *Munday v. Johnson*, 257 Fed. App'x 126, 131 (10th Cir. 2007) (unpublished) (citation and internal quotation marks omitted). In other words, to overcome the qualified immunity defense, Ms. Moore must show that an objectively reasonable officer would not have relied on Tyler Moore's statement that he had not been given the required notification. Part of the discretionary functions performed by the officers is the discretion of determining which witnesses are credible and which are not. Unless the plaintiff demonstrates that the officers' determination is not objectively reasonable, then the officers may still be entitled to qualified immunity when relying on the statements of one witness over the statements of another.

Therefore, the court concludes that the Salt Lake City Airport Police officers in this case are entitled to qualified immunity because any potential statutory right was not clearly established and because Ms. Moore has not shown that it was not objectively reasonable for the officers to rely on Tyler Moore's statements.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that SLCC's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment is GRANTED.

DATED this 21st day of February, 2017.

                        BY THE COURT:

                        DALE A. KIMBALL
                        United States District Judge